IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THOMAS ALSTON** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 16-0004** |
| | * | |
| **WELLS FARGO BANK, N.A. et al.** | * | |
| | * | |
| Defendants | * | |
| | * | |

**MEMORANDUM OPINION**

Plaintiff Thomas Alston, *pro se*, filed suit against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Capital One, N.A. ("Capital One"), alleging that Defendants charged him undisclosed fees on one occasion when he withdrew cash from a Wells Fargo automated teller machine ("ATM"). Against Capital One alone, he alleged he was improperly charged a $2 fee on another occasion for purportedly exceeding the $5000 monthly limit on cash deposits. On the basis of these two incidents, he brought five claims as a purported class action, including state law breach of contract and tort claims, as well as a claim under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. While both Defendants moved to dismiss the suit for failure to state a claim, Alston has moved for summary judgment as to Wells Fargo only. Subsequently, Alston and Capital One stipulated to Capital One's dismissal from the case.

For the reasons that follow, the Court will **GRANT** Wells Fargo's Motion to Dismiss, ECF No. 14, which the Court has converted into a Cross Motion for Summary Judgment. It will then **DENY** Alston's Motion for Summary Judgment, ECF No. 21 and **ENTER FINAL JUDGMENT** in favor of Wells Fargo and against Alston as to all remaining claims.

**I.**

Alston alleges in his Amended Complaint that in December 2014, he withdrew $200 from a Wells Fargo ATM in Virginia, using his Capital One debit card. Am. Compl. ¶ 4, ECF No. 6. He was charged a $7 fee for the transaction but submits that "[t]he ATM screen indicated that only $4 or $5 would be the total amount charged for the transaction." *Id.* ¶¶ 5-6. He further alleges that the $7 charge included an overcharge by "Capital One and/or Wells Fargo of $2 or $3," such that one Defendant or both Defendants charged all or a portion of the $2 or $3 overcharge. *Id.* ¶¶ 9, 17. Alston admits that his checking account agreement permitted Capital One to assess fees during transactions at a non-Capital One ATM, *id.* ¶¶ 39-40, but he denies that other charges would apply given that he did not make a balance inquiry during his transaction, which would result in an additional fee. *Id.* ¶ 13.

The Amended Complaint goes on to explain that Alston spoke with a Wells Fargo representative who was "unhelpful and suggested he call Capital One." *Id.* ¶ 11. He then contacted several Capital One representatives, two of whom told him that he was charged $4 for the transaction, while another one said Capital One only charged him $2. *Id.* ¶¶ 12-16. One of the representatives who said he was charged $4 mentioned that Capital One had received complaints about "illegal charges for balance inquiries." *Id.* ¶ 12. Another Capital One representative said that "the extra charge(s) may have come from Wells Fargo." *Id.* ¶ 16.

As to Capital One only, Alston alleges that in a separate incident in June 2015, he was incorrectly charged a $2 fee for going over the $5000 cash deposit limit by $2000. He maintains that he did not deposit $7000 in cash in June 2015. *Id.* ¶¶ 18-24.

On the basis of these two incidents, Alston sought to bring the suit as a class action with two distinct classes: an ATM Fee Class related to the first incident, and a Cash Deposit Fee Class

related to the second incident. He alleged five counts as follows: (1) Count 1: Violation of Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 (ATM Fee Class); (2) Count 2: Breach of Contract (ATM Fee Class); (3) Count 3: Unjust Enrichment (ATM Fee Class); (4) Count 4: Breach of Contract (Cash Deposit Fee Class); (5) Count 5: Conversion (both classes). Alston only brings Counts 1, 3, and 5 against Wells Fargo.

Alston filed suit in the Circuit Court for Prince George's County on October 6, 2015, alleging only state law claims. After Wells Fargo filed a Motion to Dismiss in that court, relying on the EFTA, Alston amended his complaint to add a violation of the EFTA as Count 1. In consequence, on January 4, 2016 Wells Fargo, with permission from Capital One, removed the suit to this Court, and, on that same day, filed a Motion to Dismiss the Amended Complaint, which is currently before the Court. ECF No. 14. In Alston's response in opposition, he also moved for summary judgment. ECF No. 21.

On January 29, 2016, Capital One likewise moved to dismiss the suit for failure to state a claim. ECF No. 25. Attached as an exhibit to the motion was a copy of a December 2014 account statement for Alston,[1] showing the December 24, 2014 ATM withdrawal at issue. *See* ECF No. 25-3, Ex. 2. The statement shows that a withdrawal was made from an ATM in Arlington, Virginia in the amount of $203 (presumably the $200 Alston withdrew, plus a $3 fee

---

[1] The name on the account is "Metropolitan Legal Team LLC," which is located at 10012 Cedarhollow Ln, Upper Marlboro, MD 20074. This address is identical to the one provided by Alston in this suit. Wells Fargo has provided public records regarding the Metropolitan Legal Team, including articles of organization, the corporate charter approval sheet, and a W-2 record of the Maryland Department of Assessments and Taxation Business Services. *See* Wells Fargo's Reply, Ex. 1, ECF No. 27-1. The records indicate that Thomas Alston is the resident agent of Metropolitan Legal Team. *Id.* The Court notes, in passing, that Alston, who is not an attorney, has been identified by defendant financial institutions in numerous consumer and foreclosure cases in this Court as the true author of pleadings on behalf of other *pro se* plaintiffs. *See, e.g.*, *Bullock v. Ocwen Loan Servicing LLC*, Civ. No. PJM-14-3836, "Order directing Defendants may depose Plaintiff and Thomas Alston in the matter of Alston's involvement in the present litigation" (August 28, 2015); *Cole v. Bank of America*, Civ. No. PJM 15-904; *Bullock v. Pulte Home Corporation*, Civ. No. 15-903.

charged by Wells Fargo), with an additional $4 in fees charged by Capital One. *See id*. Alston opposed the motion to dismiss and sought leave to amend his complaint. ECF No. 28.

On June 24, 2016, while these motions were pending, Alston and Capital One entered into a joint stipulation that dismissed all claims against Capital One with prejudice, pursuant to Federal Rule of Civil Procedure 41(a). ECF No. 31. Since Capital One's Motion to Dismiss is now moot, Alston's request for leave to amend his complaint will be denied.[2]

The Court now takes up the remaining claims against Wells Fargo addressed in their Motion to Dismiss, as well as Alston's Motion for Summary Judgment.

**II.**

Wells Fargo moves to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6), but does, in part, rely on the account statement provided by Capital One. *See* ECF No. 27 at 5. Where a motion for dismissal pursuant to Rule 12(b)(6) relies on matters outside the pleadings, the Court treats it as a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Generally, "summary judgment is inappropriate 'where the parties have not had an opportunity for reasonable discovery.'" *Aurel v. Mailroom N. Branch*, No. ELH-14-2813, 2016 WL 3957647, at *4 (D. Md. July 21, 2016) (quoting *E.I. du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011)). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that

---

[2] The Court denies Alston's Motion to Amend, ECF No. 28, given that he has requested leave to clarify his claim against Capital One under the EFTA in Count 1 is brought pursuant to Section 1693h, rather than Section 1693b. This amendment is not relevant to Alston's claims against Wells Fargo, as he already states the appropriate provision under the EFTA, namely Section 1693b. To the extent that the Motion to Amend is not moot, because Alston seeks to amend the complaint to allege that "the ATM screen indicated Wells Fargo would charge a three dollar fee in addition to Capital One's fee," ECF No. 28 at 5, the Court concludes that such an amendment would be futile, as discussed *infra*.

party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To indicate opposition, the non-movant should specify in an affidavit why, absent discovery, it "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45.

Given that Alston himself has filed a Motion for Summary Judgment, no such concerns prevent the Court from converting Wells Fargo's motion into a Cross Motion for Summary Judgment. The Court is satisfied that, pursuant to Rule 12(d), "[a]ll parties [have been] given a reasonable opportunity to present all the material that is pertinent to the motion." *See* Fed. R. Civ. P. 12(d).

A court may grant summary judgment pursuant to Federal Rule of Civil Procedure 56(a) only when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. Fed. R. Civ. Pro. 56(a); *see Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one "that might affect the outcome of the suit under governing law." *Libertarian Party of Va.* v. *Judd*, 718 F.3d 308, 313 (2013) (quoting *Anderson*, 477 U.S. at 248). The court must consider the record "in the light most favorable to the party opposing the motion" and to draw all reasonable inferences in that party's favor. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015). When parties file cross motions for summary judgment, the court must view each motion in the light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

Nevertheless, "it is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact." *CoreTel Va., LLC v. Verizon Va.*, LLC, 752 F.3d 364, 370 (4th Cir. 2014) (citation omitted). Thus, a party opposing the motion "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).

### III.

The parties present Cross Motions for Summary Judgment as to Counts 1, 3, 5—namely, those brought against Wells Fargo for purportedly overcharging $2 or $3 in ATM fees—which Alston seeks to maintain as a class action.

As an initial matter, the Court will strike all of Alston's requests to have this proceed as a class action. As a *pro se* non-attorney, he clearly runs afoul of the pre-requisite of Federal Rule of Civil Procedure 23(a)(4) that the representative must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). *Pro se* plaintiffs have been considered not "equipped by reason of training and experience" to litigate on behalf of others. *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 537 (E.D. Va. 2003). A *pro se* non-attorney cannot be placed in a position where he might put at "risk the rights of others," given that the "ability to protect the interests of the class depends in part on the quality of counsel." *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975).[3]

### A.

As to Count 1, brought under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, Alston claims that Wells Fargo violated Section 1693b by "failing to state the actual amount of the fee that would be charged for the transaction," and by "failing to provide notice of the actual

---

[3] *See* supra note 1.

and accurate amount to be charged on the screen of the ATM before Plaintiff was committed to go through with the transaction." *Id.* ¶¶ 33-34.

Pursuant to the EFTA and its implementing regulations, an ATM operator[4] is required to provide notice to the consumer of the amount of any fee that the ATM operator itself may charge. *See* 15 U.S.C. § 1693c(a)(10); *see* 12 CFR § 205.16. Section 1693b requires that "any [ATM] operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice . . . of—(i) the fact that a fee is imposed <u>by such operator</u> for providing the service; and (ii) the amount of any such fee." 15 U.S.C. § 1693b(d)(3)(A); *see Piontek v. Serv. Ctrs. Corp.*, No. PJM 10-1202, 2010 WL 4449419, at *1 (D. Md. Nov. 5, 2010). The ATM operator must provide notice of fees "either by showing it <u>on the screen</u> of the [ATM] or by providing it on paper, before the consumer is committed to paying a fee." 12 C.F.R. § 205.16(c); *see* 15 U.S.C. § 1693b(d)(3)(B) ("[A]ny fee . . . shall appear on the screen of the [ATM], or on a paper notice issued from such machine . . . .").[5] At no point under this provision in the statute applicable to ATM operators, or its implementing regulations, is the operator required to display the fees of some other financial institution that holds the account of the consumer. *See id.*

The parties do not dispute that when Alston withdrew $200 from a Wells Fargo ATM in December 2014, he was provided notice on the ATM screen that he would be charged some amount in fees for the transaction. *See* Amend. Compl. ¶¶ 5-9. In fact, in his Motion for

---

[4] Wells Fargo meets the statutory definition of an "automated teller machine operator," which is defined as any person who "(I) operates an automated teller machine at which consumers initiate electronic fund transfers; and (II) is not the financial institution that holds the account of such consumer from which the transfer is made." 15 U.S.C. § 1693b(d)(3)(D)(i). In this case, Capital One was the financial institution holding the account from which Alston made the transfer.

[5] Section 1693b(d)(3)(B) was amended in 2012 to eliminate the requirement that ATM operators also post a paper notice on the exterior of the ATM. *See* 15 U.S.C. § 1693b(d)(3)(B) (2012), *as amended by* Amendment—Electronic Fund Transfer Act, P.L. 112–216, December 20, 2012, 126 Stat 1590; *see also Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 166 (5th Cir. 2015).

Summary Judgment, Alston concedes that the ATM notice stated that there would be a charge by the "ATM Operator [i.e. Wells Fargo] and that the Plaintiff's bank [i.e. Capital One] would charge an additional fee." ECF No. 21 at 4. Further, there is no dispute that the total amount in fees charged was $7. The only material fact that initially appeared in dispute was the allocation of the $7 in fees between Defendants, as well as amount of the fee notice provided on the ATM screen.

This is now easily resolved. In its Reply (which also provided opposition to Alston's Motion for Summary Judgment), Wells Fargo asserts that the record now demonstrates that Wells Fargo was not the source of the extra charge. *See* ECF No. 27 at 5. Specifically, Wells Fargo points to the exhibit to Capital One's Motion to Dismiss, an account statement from December 2014, which reflects that Alston was charged $203 from his Capital One account for the ATM withdrawal (i.e. $200 withdrawal, plus $3 ATM fee paid to Wells Fargo), and another $4 in fees by Capital One. *See id.* (citing Capital One's Mot. Dismiss, Ex. 2, ECF No. 25-3). Capital One charged $2 for "ATM Inquiry/Transfer Fee NETWORK INQ" and an additional $2 for "ATM fee DR AMT 203.00." *See* ECF No. 25-3.

Alston has provided no evidence contradicting the account statement, and, in fact, has himself alleged facts consistent with the December 2014 account record. While he initially stated in his Amended Complaint that "[t]he ATM screen indicated that only $4 or $5 would be the total amount charged for the transaction," Am. Compl. ¶ 6, in his Motion for Summary Judgment, he clarified that the charge of $4 or $5 was his *understanding* based on past experiences. But the "ATM notice stated there would be a <u>$3 charge by the ATM Operator</u> [i.e. Wells Fargo] and that the Plaintiff's bank [i.e. Capital One] would charge an additional fee." ECF No. 21 at 4. Alston concedes he believed the additional fee from Capital One would be

only $2, "based on his previous use of ATMs where his bank charged him $2." *Id.* In his motion to amend his complaint, Alston sought to explicitly state that "the ATM screen indicated Wells Fargo would charge a three dollar fee in addition to Capital One's fee, which Plaintiff expected to be $2 based on his previous transactions using ATMs . . . ." ECF No. 28 at 5.

The Court finds no dispute with regard to whether Wells Fargo provided Alston notification that he would be charged $3 by Wells Fargo alone as an ATM fee, and that Wells Fargo did, in fact, charge Alston only $3. While Alston maintains that he did not make the balance inquiry that may have been the basis of an additional $2 fee by Capital One, *see* ECF No. 28, this fact, even if disputed, is not material to Alston's claims against Wells Fargo. Under the EFTA, Wells Fargo was only required to provide Alston with notice of the amount that the ATM operator would charge in fees—a requirements that Wells Fargo satisfied. Wells Fargo was not required to provide notice as to the amount that Capital One would charge Alston. *See* 15 U.S.C. § 1693b(d)(3)(B; 12 C.F.R. § 205.16(c). The Court finds no violation of the EFTA by Wells Fargo and concludes that Wells Fargo is entitled to summary judgment as a matter of law as to Count 1.

**B.**

The Court turns to Alston's state law claims: Count 3 for unjust enrichment and Count 5 for conversion. In the context of choice of law for tort claims, Maryland follows the principle of *lex loci delicti commissi*, i.e. the law of the place of the harm. *See Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712, 716 (Md. Ct. Spec. App. 1997). Because Alston's claims relate to fees charged while withdrawing money from an ATM in Virginia, the Court finds that Virginia law applies.

Wells Fargo submits that, in Virginia, the EFTA preempts all other state law claims. Under Section 1693q, EFTA annuls state law only "to the extent that those laws are inconsistent" with EFTA, but does not affect a state law if "the protection such law affords any consumer is greater than the protection [under EFTA]." 15 U.S.C. § 1693q.  Wells Fargo asserts that the Virginia legislature has explicitly declined to "enact state laws regulating electronic fund transfers that are already governed by the EFTA" as indicated in Section 8.4A-108 of the Virginia Code.  Va. Code Ann. § 8.4A-108 ("[T]his title does not apply to a funds transfer any part of which is governed by the Electronic Fund Transfer Act.").  Even if this were not the case, says Wells Fargo, Alston's tort claims nonetheless fail on the merits.

The Court need not address the issue of preemption, given that Alston's tort claims fail as a matter of law based on the undisputed facts already found in connection with Count 1.  Under Virginia law, unjust enrichment requires the plaintiff to demonstrate that (1) he conferred a benefit on the defendant, (2) the defendant knew of the benefits and reasonably should have expect to repay the plaintiff, and (3) the defendant "accepted or retained the benefit without paying for its value." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834, 838 (Va. 2008).  The Court concludes that the undisputed facts show that Alston did not confer any benefit on Wells Fargo such that the latter can be said to have been unjustly enriched. Alston was on notice that he was to be charged a $3 ATM fee by Wells Fargo and agreed to pay the $3 fee by proceeding with the transaction.

Similarly, there is no merit to Alston's claim for conversion. To establish the tort of conversion under Virginia law, the plaintiff must show that the defendant engaged in the "wrongful exercise or assumption of authority over [the plaintiff's] goods, depriving the owner of their possession," or that the defendant engaged in "any act of dominion wrongfully exerted

over property in denial of, or inconsistent with, the owner's rights." *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (Va. 2001). The undisputed facts demonstrate that Wells Fargo did not wrongfully take any fees from Alston: it only charged the $3 fee Alston was notified of and agreed to pay.

As to the remaining two counts, Count 3 for unjust enrichment and Count 5 for conversion, the Court grants Wells Fargo summary judgment.

### IV.

Summing up:

The Court **DENIES** Alston's Motion for Summary Judgment, ECF No. 21, and **GRANTS** Wells Fargo's Motion to Dismiss, ECF No. 14, which the Court has converted to a Cross Motion for Summary Judgment. **FINAL JUDGMENT** will be entered in favor Wells Fargo and against Alston, and the case will be **CLOSED**.

A separate Order will **ISSUE.**

                                               /s/

                                       **PETER J. MESSITTE**
                                    **UNITED STATES DISTRICT JUDGE**

**August 4, 2016**